UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

AGGELIKOS PROSTATIS CORP.,

                    Plaintiff,                 08 Civ. 9094 (JGK)

          - against -                          OPINION AND ORDER

SHUN DA SHIPPING GROUP LTD. and ZHENG
TAI SHIPPING GROUP LTD.,

                    Defendants.
─────────────────────────────────────

JOHN G. KOELTL, District Judge:

     Defendant Zheng Tai Shipping Group Limited ("Zheng Tai")

moves pursuant to Rule E(4)(f) of the Supplemental Rules of

Certain Admiralty and Maritime Claims to vacate an order of

maritime attachment issued by this Court on October 22, 2008.

On that date, the plaintiff, Aggelikos Prostatis Corp.

("Aggelikos"), filed a verified complaint against Zheng Tai and

defendant Shun Da Shipping Group Limited ("Shun Da"), alleging a

breach of contract claim in the amount of $16,688,015.11, and

seeking an ex parte order of attachment in aid of a London

arbitration (the "Verified Complaint").  The Court reviewed the

Verified Complaint and attorney affidavit and, after determining

that the conditions of Supplemental Rule B appeared to exist,

entered an order authorizing process of maritime attachment and

garnishment against the assets of Zheng Tai and Shun Da (the

"Attachment Order").  Pursuant to the Attachment Order, the

plaintiff attached several electronic fund transfers to or from defendant Zheng Tai.

For the reasons discussed below, the defendant's motion to vacate the order of attachment is **granted.**


I

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." In order to obtain an attachment, apart from satisfying the filing and service requirements of Rules B and E, the plaintiff bears the burden of showing that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006); Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 278 (S.D.N.Y. Oct. 23, 2006). The Court must vacate an attachment if the plaintiff fails to sustain its burden of demonstrating that the requirements of Rules B and E are satisfied. Aqua Stoli, 460 F.3d at 445.

2

II

In the Verified Complaint, the plaintiff asserts the
following facts.  The plaintiff is a foreign corporation
existing under the laws of Liberia, and defendants Zheng Tai and
Shun Da are foreign corporations existing under the laws of
China.  At all relevant times, the plaintiff was the owner of a
motor vessel known as "Angelic Protector" (the "Vessel").  On or
about July 17, 2008, the plaintiff contracted with Shun Da to
sell the Vessel to Shun Da under certain terms and conditions
for $19.5 million.  Under the Memorandum of Agreement executed
by the plaintiff and Shun Da, (the "Agreement"), Shun Da was to
pay a security deposit of 15% of the purchase price, or
$2,925,100.00, within four banking days from the date of the
Agreement.  The balance of the purchase price, together with
bunker and lub oil charges, were to be paid in cash into an
account in the plaintiff's name prior to October 16, 2008, the
expected date of delivery of the Vessel.  (See Compl. ¶¶ 2-10.)

The plaintiff alleges that Shun Da breached the Agreement
by failing to remit the balance of the purchase price of the
Vessel and/or failing to carry out the terms and conditions for
the purchase of the Vessel.  (See Compl. ¶ 12.)  It further
alleges, and defendant Zheng Tai concedes, that the security
deposit owed to the plaintiff was paid by Zheng Tai.  (See

Compl. ¶¶ 24-25; Declaration of Wu Zhengmao ("Wu Decl.") ¶¶ 18-20.)  Primarily on the basis of this payment, the plaintiff alleges that Zheng Tai is either a receiving/paying agent of Shun Da, partners and/or joint venturers with Shun Da, or otherwise affiliated with Shun Da.  (See Compl. ¶¶ 21-23.)

III

Defendant Zheng Tai moves to vacate the order of attachment on two alternative grounds.  First, it argues that the plaintiff has no valid prima facie admiralty claim against it because the underlying cause of action – breach of a contract to purchase a vessel – does not provide a basis for admiralty jurisdiction. Second, it argues that there is no basis for the attachment because Shun Da has no interest in the attached funds, and Zheng Tai is not the alter ego of Shun Da.

It is "elementary hornbook law that a contract for the sale of a vessel is not within the admiralty jurisdiction of the district courts."  Int'l Shipping Co., S.A. v. Hydra Offshore, Inc., 675 F. Supp. 146, 150 (S.D.N.Y. 1987), aff'd 875 F.2d 388 (2d Cir. 1989); see also CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 380 n.4 (2d Cir. 1982); The Ada, 250 F. 194, 197-98 (2d Cir. 1918) (Rogers, J., concurring). Indeed, a leading treatise on admiralty law instructs that "[a]lthough never held by the Supreme Court, it has been well

4

established by the lower courts that contracts for the sale of
the vessel are non-maritime.  The doctrine is perhaps best
understood as an analogy to the rule that excludes shipbuilding
contracts from the admiralty jurisdiction."  1 S. Friedell,
Benedict on Admiralty § 186 (7th ed. 2008).  The plaintiff
argues that "the seascape" has changed in recent years with
respect to what disputes fall within the admiralty jurisdiction.
The plaintiff is correct that the way courts determine what
disputes fall within the admiralty jurisdiction has changed.
However, this change has not swept within the admiralty
jurisdiction a contract that is strictly for the sale of a
vessel, such as the contract in this case.

     The chief cases credited by the plaintiff with "alter[ing]
the seascape" of admiralty jurisdiction are Norfolk S. Ry. Co.
v. James N. Kirby, Pty. Ltd., 543 U.S. 14 (2004), and
Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.,
413 F.3d 307 (2d Cir. 2005).  Kirby involved two bills of lading
that provided for the transportation of goods from Australia to
Alabama, which required carriage by sea from Australia to
Savannah, Georgia and carriage by land from Savannah, Georgia to
Huntsville, Alabama.  Kirby, 543 U.S. at 18-19.  The Supreme
Court held that because the "primary objective [of the bills of
lading] is to accomplish the transportation of goods by sea from
Australia to the eastern coast of the United States," the

contracts were maritime in nature.  Id. at 24.  The rationale of
Kirby was that maritime law must catch up with the modern
realities of maritime transportation, which often includes a
land component.  See id. at 25 ("Maritime commerce has evolved
along with the nature of transportation and is often inseparable
from some land-based obligations.  The international
transportation industry clearly has moved into a new era . . .
.") (internal quotation marks omitted).

    Kirby loosened the boundaries of admiralty jurisdiction.
The Supreme Court criticized in broad terms the rigid "spatial
approach" taken by some lower federal courts in deciding whether
intermodal transportation contracts for intercontinental
shipping were maritime in nature.  These courts "held that
admiralty jurisdiction does not extend to contracts which
require maritime and nonmaritime transportation, unless the
nonmaritime transportation is merely incidental – and that long-
distance land travel is not incidental."  Id. at 26.  The
Supreme Court's holding in Kirby invalidated that approach to
distinguishing maritime from nonmaritime contracts, which
"depend[ed] solely on geography."  Id. at 27.  The Supreme Court
held that "the boundaries of admiralty jurisdiction over
contracts . . . [are] conceptual, rather than spatial," and
instructed that "[t]o ascertain whether a contract is a maritime
one . . . . The answer depends upon the nature and character of

6

the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Id. at 23-24 (internal quotation marks, alterations, and ellipses omitted).

In Folksamerica, the Court of Appeals for the Second Circuit echoed Kirby's "primary objective" inquiry.  The Court of Appeals held that an insurance policy with both marine and land components was within the admiralty jurisdiction because "the insurance contract at issue is primarily or principally concerned with maritime objectives, although there were incidental non-maritime elements." Folksamerica, 413 F.3d at 315.  By applying Kirby to an insurance contract, the Court of Appeals extended the scope of the analysis in Kirby beyond the determination of whether transportation contracts were maritime in nature.  The Court of Appeals wrote that Kirby "suggests a global principle" that a "mixed" contract comprised of both maritime and nonmaritime components should be considered maritime in nature if "the primary or principal objective" of the contract is maritime commerce.  Id.  Because the insurance contract in Folksamerica had marine insurance as its principal object, and it is well established that marine insurance is maritime in nature, see Jeffcot v. Aetna Ins. Co., 129 F.2d 582, 584 (2d Cir. 1942) (citing cases), the Court of Appeals held that the insurance contract was maritime in nature.  See Folksamerica, 413 F.3d at 315.

The change of approach dictated by <u>Kirby</u> and <u>Folksamerica</u> does not alter the analysis of whether the contract for the sale of the Vessel in this case was maritime in nature.  The contract in this case was not a mixed contract comprised of both marine components over which the Court has well-established admiralty jurisdiction and land components, as was the case in <u>Kirby</u> and <u>Folksamerica</u>.  Rather, there is no component of the contract in this case over which the Court has well-established admiralty jurisdiction.  On the contrary, it is well established that the Court lacks admiralty jurisdiction over contracts for the sale of vessels.  Thus the analyses in <u>Kirby</u> and <u>Folksamerica</u>, where the issue was whether a nonmaritime element precluded a contract with a maritime element from being maritime in nature, do not implicate the contract in this case.  The primary and indeed only objective of the contract in this case, the sale of a vessel, was not maritime.

The only marine aspect to the contract in this case is that the object to be sold was a ship.  But in <u>Kirby</u> itself, the Supreme Court instructed that "[t]o ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute . . . ."  <u>Kirby</u>, 543 U.S. at 23.  Indeed, it would not comport with the "conceptual" approach dictated by <u>Kirby</u> to categorize contracts that are fundamentally

sales contracts as maritime contracts simply because a ship is involved.

The cases in this district that have dealt with contracts for the sale of vessels after Kirby do not support the plaintiff's expansive reading of the Supreme Court's analysis in that case, or its equally liberal reading of the Court of Appeals' analysis in Folksamerica.  In Vrita Marine Co., Ltd. v. Seagulf Trading LLC, 572 F. Supp. 2d 411, 411 (S.D.N.Y. 2008), Judge Rakoff explicitly applied the Kirby analysis in holding that "contracts for the sale of a vessel are not maritime in nature."  Judge Rakoff reasoned that such contracts "d[o] not have as [their] 'primary objective' either a 'maritime service' or a 'maritime transaction . . . .'"  Id. (quoting Kirby, 543 U.S. at 24).  Judge Rakoff also noted that just because "a vessel is 'involved in the dispute' does not make 'the principal objective of the contract maritime commerce.'"  Id. at 411-12 (quoting Williamson v. Recovery Ltd. P'ship, 542 F.3d 43 (2d Cir. 2008)) (alterations and ellipses omitted).  Judge Baer has also held, after Kirby, that "[c]ontracts for the sale of ships are not cognizable in admiralty."  Exmar Shipping, N.V. v. Polar Shipping S.A., No. 06 Civ. 12991, 2008 U.S. Dist. LEXIS 65504, at *9 (S.D.N.Y. Aug. 27, 2008).

Most recently, Judge Gardephe relied on Vrita Marine in declining to issue an order of maritime attachment relating to

the alleged breach of a contract to purchase a vessel.  See
Unicorn Bulk Traders Ltd. v. Fortune Maritime Enters., Inc., No.
08 Civ. 9710, 2009 WL 125751, at *3 (S.D.N.Y. Jan. 20, 2009).
In Unicorn Bulk, Judge Gardephe reasoned that "there is a
controlling Second Circuit decision – The Ada [] – holding that
a contract to purchase a vessel at a fixed price is not
justiciable in admiralty."  Id. at *2.  Judge Gardephe found the
argument that "the Supreme Court [in Kirby] and Second Circuit
[in Folksamerica] have overruled The Ada sub silentio, at least
with respect to The Ada's holding that a contract for the sale
of a ship is not maritime in nature," to be unpersuasive.  Id.
at *3.  He noted that "[t]his Court is bound to follow
controlling Second Circuit precedent unless that precedent is
overruled or reversed – even if, as here, the precedent has been
criticized by scholars and certain courts in other Circuits."
Id. at *2.

    To support its broad interpretation of Kirby and
Folksamerica, the plaintiff seeks to rely on Kalafrana Shipping
Ltd. v. Sea Gull Shipping Co. S.A.R.L., No. 08 Civ. 5299, 2008
WL 4489790 (S.D.N.Y. Oct. 4, 2008).  In Kalafrana, Judge
Schiendlin held that "a contract for the purchase of a launched
ship that has been plying the seas for some time" was, in the
wake of Kirby, a maritime contract.  Id. at *3.  However, the
contract in Kalafrana was "mixed" like the contracts in Kirby

and Folksamerica; it provided for both the sale of a vessel and
for the seller to "make any necessary repairs to the vessel."
Id. at *4.  It is well established that ship repair contracts
are considered maritime in nature.  See CTI-Container, 682 F.2d
at 380 n.4.  Thus, the holding in Kalafrana reflects the new
approach to mixed contracts established in Kirby and reinforced
in Folksamerica.  That approach does not apply in this case
because the contract in this case was not comprised of a mix of
well-established maritime components and nonmaritime components.
Cf. Unicorn Bulk, 2009 WL 125751, at *3 ("The Court declines to
follow Kalafrana for a second reason: as noted above, the
contract at issue there was a "mixed" contract, like the
contracts at issue in Kirby and Folksamerica.").  To the extent
that the language in Kalafrana can be read to support the
argument that after Kirby and Folksamerica, a contract providing
only for the sale of a vessel falls within the admiralty
jurisdiction, the reasoning of Kalafrana is contrary to well-
established persuasive precedent.

　　　For the reasons explained above, a contract solely for the
sale of a vessel does not fall within the admiralty
jurisdiction.  Therefore, the plaintiff in this case does not
have a valid prima facie admiralty claim against defendant Zheng
Tai, and the attachment must be vacated.  Thus, the Court need
not reach the alternative ground advanced by the defendant for

vacating the attachment.  Similarly, the plaintiff's request for

leave to amend its Verified Complaint to take into account

evidence of an alter-ego relationship between defendants Zheng

Tai and Shun Da is moot, because such evidence would not provide

a basis for admiralty jurisdiction.


                              CONCLUSION

     The Court has considered all of the parties' arguments.  To

the extent not specifically addressed they are either moot or

without merit.  Therefore, the defendant's motion to vacate the

attachment against Zheng Tai is **granted.**  The writ of attachment

against Zheng Tai is **vacated**.

**SO ORDERED.**

**Dated:     New York, New York**
            **January 30, 2009**

                                        John G. Koeltl
                                   United States District Judge


                                  12